This is our third case of the morning. People of the state of Illinois v. Ryan Yoselowitz for the appellant, Mr. Muslin, for the appellee, Ms. Johnson. You may proceed. Thank you. Your Honors, Mr. Tennyson, this is a case where we are asking the court to declare the sentencing provision of 550-5G, the marijuana statute, unconstitutional in that it creates a sentencing scheme whereby possession of over 5,000 grams of marijuana with intent to distribute is a Class X felony, which is punishable by six years to 30 years in the penitentiary. And also, when you're in the penitentiary, you lose a lot of privileges by having a Class X sentence attached to you. You don't get educational good time. You're not eligible for any kind of work release. You're subject to the penalties which were created for Class X felonies, and all the other Class X felonies in Illinois have either great bodily harm attached to them, or the potential for great bodily harm attached to them. Of the felonies that are Class X felonies, other than heroin and cocaine, all of them are physically violent acts which create great bodily harm. We believe this case is much closer to the case of McCabe, which was decided by the Illinois Supreme Court when it transferred marijuana from the dangerous drug classification to the cannabinoid classification. And the reason is, they did that because they looked at the empirical data to show what was different about the harm which marijuana created and the harm that was created by the other dangerous drugs, and they determined that the classification… Was that a possession case or a sale case? That was a… I believe it started as a sale case, McCabe, and I could be wrong, but I think it was a sale case, and they changed it based not on the conduct, but based on the classification and the harm which the drug created. McCabe, the court went into, and we've cited a lot of the language, but the court went into a full recitation of what was different about marijuana and its effect, and this was back in, I forget what year, but either the late 70s or early 80s, the difference in the effects of marijuana on the body and the effects of cocaine, heroin, and I think they also went to LSD. When they determined that the scientific evidence at that time indicated that the classification was unconstitutional, therefore the penalty was unconstitutional, and then they created the Cannabis Control Act. In this case, the reason we believe it's unconstitutional is the evidence in this case was, yes, there was 5,000… there was 20-some pounds of marijuana which were sought to be sold. The charge which was brought was over 5,000 grams with intent to sell. If you possess 5,000 grams and they don't charge you with intent to sell or over 5,000 grams, it's a Class I felony. Now, clearly, people don't possess over 5,000 grams of marijuana for their own personal use. That's 10 pounds at the minimum. So anyone who possesses it clearly intends to sell it, and the distinction between the intent to sell and just pure possession is actually an illusory or, in my opinion, a nonsensical distinction, and one becomes a Class I and one becomes a Class X. With respect to… Well, why? I don't… I don't know what the evidence is of that. I mean, I don't… I would agree with you that somebody would say, well, I guess most of the people that have that much, but there have certainly been anecdotal cases of individuals that go for their own purposes and don't sell. Maybe because of some of the very things cited about medical marijuana. And if they get caught with it, they get hammered with a Class I felony, and maybe the prosecutor evaluates the case and decides, this isn't a Class X. This guy is a, you know, he runs an otherwise legitimate business. There is absolutely not a hint of any information that he sells to anybody else or even permits friends to use it for free or thereby distributing it. But it's for him. And he happens to have a store. He's a good enough grower that he's got it stored. But he still gets a Class I felony, so why is it automatically so disproportionate? Well, what about someone who's not a grower that has that much and doesn't get charged with intent to sell? And that's a distinction. And I don't know of any grower cases in Illinois, although I haven't researched all of them. They may not get appealed. Right. That's true. You've got no way of knowing about them. And if the prosecutor deals with it in a reasonable way, assuming that the facts show that this is not a distributor, he's not selling it, maybe that's the prosecutor's tipping point. And having been a prosecutor and having been a defense lawyer for 30-some years, I think that most prosecutors, when faced with someone who has 10 pounds or more, would, unless they were convinced somehow that he was not selling, would be, and I haven't seen that happen, but I'm sure it does. There isn't any way you can see it happen. Right. In 100-plus counties across Illinois, except for cases that come up on appeal. I agree. The other thing, though, is if you look at, let's take that out of the equation for a second, and look at the Narcotics Profiteering Act. And this was another situation. In, at the sentencing, the argument that was made as to why he deserved such a heavy sentence is he sold, he showed that he made $250,000, he lived in a very nice apartment, and on the way, before he was charged with the possession, he was brought to McLean County by an individual who got arrested because he was taking marijuana back from Mr. Yoselowitz. And he then cooperated with police, admitted the drugs were from Mr. Yoselowitz, and had Mr. Yoselowitz then come down to deliver more, where he could then get stopped and charged. Under the Narcotics Profiteering Act, he could have been charged under that. And that's only in Class I, even if one of the charges, the fax pattern, would be an X. So he could have been charged under Narcotics Profiteering. One of the charges, one of the fax could have been an X distribution, and he still would have been eligible, it would have been a one. And so that, again, it makes no sense when someone under the Narcotics Profiteering statute is, commits two crimes, one which can be an X, for profit, and then is charged under that, the penalty section is that it's a Class I. Additionally, the harm associated with marijuana, we brought in Dr. Fitchner. Dr. Fitchner was the Director of Illinois Mental Health before he then moved to California. He testified, he's written a book on it, he is fully aware, he's a licensed psychiatrist, he was declared to be an expert. He testified that there was no great bodily harm associated with marijuana or the distribution of marijuana. And the only thing that the prosecution got him to agree was, it could cause some kind of harm to the community. Well, so can pornography, so can a lot of things that aren't an X. But it doesn't cause the kind of harm which the X sentences bear. And given that, there is no rational relationship between the Class X punishment and the crime of the distribution of marijuana, or the possession with intent to distribute. It took from 1986 to 2007 for the United States Supreme Court in Kimbrough to review and re-evaluate the question of crack cocaine being 100 to 1, as opposed to powder cocaine, because there was this idea out there when the legislature enacted the Omnibus Crime Control Act in 84, that crack cocaine had this terrible implications attached to it. And motions were filed just like this day in, day out in federal courts around the country, and they were all unfortunately just disregarded out of hand until the Supreme Court finally wrote Kimbrough. And what they said in Kimbrough was, hey, we finally looked at the empirical evidence, and you know what, we were wrong. There is no distinction between the harm caused by crack and powder, and okay, we're going to reduce the penalty sentence. We are asking the Sentencing Commission to reduce it down to 1 to 1. Well, it hasn't been reduced to 1 to 1 yet, it's 18 to 1. But that was also based on the same type of theory, the same thought process as our Supreme Court used in McKay. We're not saying the sentence was excessive under the facts, and we're not asking that the marijuana be legalized in any way, shape, or form. But what we are saying is that the penalty has to fit the crime, so to speak. And one of the things to say is, well, does it shock the moral conscience of society? Well, the data now is that 56% of the country is opposed to legalization, 44% is in favor. How does any of this have any possible relevance to the business before us? Why do we care? Isn't this just a matter before the legislature to resolve? And if 100% of the people thought there should be no crime, why does that matter to us? It matters because of the question of shocking the conscience in terms of the penalty case. I'm not asking this court, and this court does not have the power, nor would I ever concede it has the power, or suggest to legalize marijuana. We're not asking that. So polls deal with shocking the conscience? What a poll reveals? It certainly would indicate that a poll review of where the country's position on this is now would indicate that a sentence of 6 to 30 would shock the conscience of the country. And I believe that's why it has something to be brought in front of your honors, because it does. In 15 states, medical marijuana is legal. In another couple states, it's totally decriminalized. To look at the medical marijuana states, we don't have it in Illinois, but in California and the other states, to believe that anyone isn't going to some doctor and getting a prescription for some reason other than a legitimate medical reason, again, I believe is fiction. And I've seen people go, and everybody has a prescription. Everyone's walking around with marijuana. So there are some counties in Las Vegas or in Nevada, rather, where prostitution is legal. Prostitution is aptly termed the world's oldest profession. There's lots of prostitution everywhere. Therefore, what? There's a constitutional right now to engage in it, and laws against it are. No, I'm not saying there isn't. But I'm not saying there's a constitutional right to engage in the sale of marijuana. What if there were polls showing that it's time to eliminate prostitution as an event? But I'm not saying to this court to eliminate the distribution of marijuana as a crime. And I'm not saying to this court, eliminate prostitution as a crime. What I'm saying to this court is that as it sits today, the class X penalty associated with distribution of marijuana is unconstitutional. And the reason it's unconstitutional is it, it, he, you know, they talk about class in terms of unconstitutionality. Well, here's the class. He's in a class with people who have committed a crime which does not constitute or create either great bodily harm or the potential for great bodily harm. And yet he's being sentenced as if he's in a class which does do that. That's what our class X felonies attempt to prohibit by the excessive sentences. Let me ask you, would he have been eligible to be sentenced as a repeat offender? No. Didn't he have several other convictions for the same thing within the last 10 years? So he had a misdemeanor conviction, which was a supervision, which was terminated unsuccessfully, I believe. Was it a possession? And he had a felony, I forget if it was a conditional discharge or probation, for a small amount of distribution, less than an ounce. And I said to Judge Freitag, I'm not saying he shouldn't be punished because he broke the law. Whether you believe marijuana is a great substance and everybody should smoke it or you believe it's the worst substance in the world, the law says you can't sell it and you can't possess it. The question is what should be the constitutional penalty fitting within a constitutional guideline of proportionate penalty within the same classification? Which should be the constitutional result? If this is prosecuted as a Class I, the narcotic profiteering, and he's given the max. It's 15. What would he do? Seven and a half? He would do half minus good time. Educational good time, which is an institutional, which I think is 90 days a year. That's discretionary. Yeah, but if you're able to earn it. He's deprived of that at this point in time by having the X. The position of the state at the sentencing hearing, and I'm sure here, was this was not a situation where it's crime for crime. Other marijuana offenders who were charged under Class X get the same Class X sentences, and therefore it's not unconstitutional because it's not a classification issue. We believe that it is a classification issue, and it's not as limiting to be a classification issue. It's not as limiting as just marijuana seller, marijuana seller. The classification and the reason he's being discriminated against and why it becomes unconstitutional is, as I said, the fact that he is, one, the narcotics profiteering, but two, he's a nonviolent offender with a crime that has indicated no great bodily harm and no potential for great bodily harm, and yet he is being sentenced in the same class as criminals who have been convicted of crimes which create bodily harm and the potential for great bodily harm. Thank you. Thank you, counsel. Ms. Johnson? Thank you. May it please the court, counsel? Well, the defendant is consistent, and he is correct in what some of the arguments that the state will be making today, and I think the defendant's argument can also be stated rather concisely, and his argument is the defendant is that cannabis is relatively harmless, and he asked this court today to come and to consider only research and opinions of pro-cannabis advocates and to discredit all research and all legislative findings to the contrary as outdated. But the Supreme Court has been very clear that that is exactly what this court should not do. Respectfully, this court is not to legislate social policy. This court is not charged with resolving scientific questions. Even when there is an honest conflict of opinion, that isn't your role, and I say that with the utmost respect. So, addressing first the proportionate penalties argument. Today, counsel has spoken in just large and general terms about cannabis just isn't that harmful and it shouldn't be with other class sexes, but I'm going to narrow it down to what the law requires he show in order for this to be found unconstitutional. For a proportionate penalties violation, you must show that the penalty is either cruel or degrading, or that the penalty in this case is harsher than for an offense with identical elements. Under the cruel and degrading portion, you have to show that this sentence was so wholly disproportionate to the crime that it shocks the moral sense of the community. Defendant claims his 12-year sentence after pleading guilty to possession with intent to deliver 23 pounds is just that. And why does he claim that? Because cannabis is harmless. He relies on the testimony of Dr. Fitchner, and he highlights in his brief, and today he also mentioned, the portions of Dr. Fitchner's testimony that really support his position. But I was accused in the reply brief of having a problem with my peripheral vision, so I'm going to kind of highlight the other portions of Dr. Fitchner's testimony where he actually conceded that cannabis is harmful. Dr. Fitchner said that certainly 23 pounds of marijuana distributed into a community causes harm. He acknowledged deaths have likely occurred from driving under the influence of marijuana. But the most striking part of Dr. Fitchner's testimony, to me anyway, is when he discussed diagnosing a substance abuse disorder under the DSM. He acknowledged that under the DSM, a doctor can find a substance abuse disorder based solely on the use of cannabis. And he even conceded that he personally had made such diagnosis, even though this was contradicting his fervent opinions that there is no harm. And in making that diagnosis, he also conceded that he had to find that the use of marijuana harmed the user to the point that they were not able to function socially or occupationally. The defendant's own expert undermined his entire argument that cannabis is really not harmful. He also argues that there are a minority of the general population that believes cannabis is harmless. And Dr. Fitchner also testified that he has spoken to people, people with no medical degrees, and those people have told him that they believe marijuana is less harmful than alcohol. He has spoken to alcoholics who have said they have cured their alcohol addiction by switching to marijuana. That's not what needs to be proven for a proportionate penalties violation. The very fact that he recognizes it's only the minority of the population that holds this opinion, establishes, obviously, that the majority finds cannabis is harmless. And the majority believes severe penalties are required. The majority also is consistent with the fact that we have legislation criminalizing the possession with intent to deliver 23 pounds of cannabis. And the U.S. Supreme Court has said it isn't the opinion of the minority of people that is your evidence of the objective standards society believes and where they stand on the legalization of marijuana. The best objective evidence of today's present moral compass is found in the legislation. The legislation says it's a class X felony. And in the end of April, early May, Illinois had the opportunity with House Bill 30 to allow for people who suffered from, I believe it was 18 specified ailments, to have medical marijuana and it was defeated. And in the defendant's brief, he mentioned Proposition 19 in California, which would have allowed residents of California to have a small amount of recreational cannabis. And since the time the brief has been written, that was also defeated. So it seems that, again, the legislation we currently have is the objective standard on where the community feels. And in light of that, I certainly don't agree that this was a shocking sentence for the offense that was committed. Understanding public policy is across the street rather than here. Yes, it is. Do you think a rational argument can be made from a public policy perspective that the economic loss and the personal loss that a defendant would suffer, because he was apparently making a good living from this and living well, I assume he had material possessions. Seven and a half years in the slammer as a Class I felon with the prospect for additional good time is a tremendous economic disincentive. And if the public were asked, is that long enough considering the fact that if we keep him in for 12, it's going to cost you, and I used to pay attention to this, I don't know how much it costs anymore to keep somebody, $24,000 a year to keep him in for an additional four to five years. Is it worth that to society? I'll state the question another way. If we had a survey, don't you think that an awful lot of members of the public would say, I guess seven and a half. Fourteen would be enough, knowing he'd serve approximately half of it, versus us having to spend another $50,000 to $60,000 to $75,000 to $80,000 to keep him locked up? Well, I don't actually believe that. Because you have to look at it based on the facts here. The Class X starts at 5,000 grams, which is approximately 11 pounds. He had 23 when he was stopped, another 13 found in his home. As part of the agreement, he wasn't charged with 36. So I think when you present, and I'm not going to use 36, since he played guilty to the 23, but when you present the 23, I don't think the majority of them would find it shocking. Not shocking, perhaps, but not cost effective. And I understand that's an argument for somebody else, but I'm just interested. Personally, I would say no, but of course you're saying, what other opinion would she have standing up there on the side she is? Even if you should find that. Even if you should think that, to you, it's a little bit shocking, or it's against public policy, or it's just not a wise public policy to have that. It would require you, though, to find that the legislative findings here that created the statute have led to an unconstitutional result. And I don't think that you can find that here. Like I said, it's not, again, my opinion, this is not a shocking sentence. The second part, though, of the proportionate penalties, is that he has to show that this was a harsher sentence than another offense with identical elements. I've said it out in my brief, and I'll basically say it here. He has not identified another offense with the same elements. His entire attempt under that prong is to compare it to other Class X's, which do or don't have an element of bodily injury. The law is clear. It has to be a comparison to other offenses with identical elements. He hasn't done that. He hasn't carried his burden on that prong. Similarly, when it comes to the argument on equal protection, he cites no authority for his claim that he is similarly situated to offenders who have committed other acts, and those acts are not Class X, and those acts do involve bodily injury. But again, that's not what he is required to find under the proportionate, under the equal protection. Equal protection requires that all people charged under a statute are treated the same. Am I correct? That is my argument, because that's the law. Equal protection does not require that people who have acted out in a dissimilar way are treated or penalized equally. And I'll say it in a better way. Equal protection does not require equality or proportionality in a penalty for dissimilar conduct. Comparing his offense to a variety of other Class S offenses or other Class I offenses is not what is required under the law. And you can see that if you just look at the definitions of those various offenses. Whatever offense he wants to bring up, look at the elements there. Look at our elements. They're not identical. It doesn't apply. That's not the analysis to be made. As for a rational relationship, is it reasonably designed to remedy the evil that the legislature has targeted? It is. The legislature has determined that the sale, the possession, and intent to deliver cannabis is evil. They have made a graduated scale where the most severe penalties are reserved for those selling or intending to deliver 11 pounds or more. Again, here we had 23 pounds. Defendant's response to this is, it's harmless. As Dr. Fischer testified, it's a myth that this causes harm. It's questionable that it damages the community. What I note in his argument, though, with this is defendant does not argue that the statute is not rationally related to the evil the legislature identified. What defendant is arguing is that the large scale possession and delivery of cannabis is not evil. Those are two different arguments. That's not the argument that should be made here if he wants to establish a constitutional violation. As for due process, it is very similar to the rational relation test. I, again, in my brief addressed it. He didn't identify what that argument was. The trial court struggled and said they could not discern what the due process argument was. So I stand on my brief and, again, argue it has been forfeited. Defendant says he is not asking you to legislate from the bench, but he is. He has not established a single constitutional violation. He hasn't established equal protection. He hasn't established proportionate penalties or due process. Yet he is asking you to vacate the sentence of his client based upon a finding that will be directly contradicting legislative findings. He's asking for a precedential finding from you that cannabis is harmless. And, therefore, to sentence his client to up to 30 years, even though he got 12, is unconstitutional. This is not the field of battle that he's waging. This just isn't it. So I would ask you to affirm the trial court. Thank you. Rebuttal. I am not saying that marijuana is absolutely harmless. And I am not saying that you should legislate and make it legal. What I am saying and what I am asking is what the court in Naftalin v. King stated. The people have the right to expect that members of the courts will possess the courage and integrity necessary to declare unconstitutional any legislation which contravenes the rights of the people as set forth in the due process and equal protection clauses of both state and federal constitution. The court should invoke these constitutional guarantees to protect the rights of those who are wronged by such legislation and should not be servile to any interest or influence regardless of the power that it yields. Counsel saying, well, hey, we have legislation, so it must be what is necessary and that legislation can't be unconstitutional. But throughout history, our courts have determined that various areas of legislation have been to be unconstitutional. We're talking about, she's talking about harm and, oh, this is harmless and it's harm and it's an evil and therefore it should be a class X. Well, that, I always forget what those things are called, you know, when you say the dog has a tail and everything that has a tail is a dog. But in reality, that's their argument. There's certainly harm associated with possession of a firearm. Yet, that's not a class X felony. There's harm associated with every bit of prostitution, as Justice Steigman was saying. But that's not a class X felony. The harm is not, does not rise to the level that it should be a constitutionally stamped class X felony. The last time that the legislature reviewed the empirical data was 1997, 14 years ago. Certainly things have changed since then and our brief talks about the things that have changed. Dr. Fitchner, he said it does not give a potential for great bodily harm or create great bodily harm. He didn't say there's no harm. He said the harm is minimal. With respect, and I don't think this really has much to do with it, but the medical marijuana bill that came up in front of the legislature passed, I mean lost by seven votes, which is somewhat interesting when you talk about harm. But that lost by seven votes, but the carry concealed bill passed, or lost by less votes, I'm sorry, than the seven votes, didn't pass. I believe that the dissimilar, equal protection and the due process have been met, and I'll tell you why specifically. When she talks about case by case, again, okay, if their position is so narrow-minded, so tunnel-viewed that, okay, if two people are charged with marijuana and one person for 6 to 30 and one person got 35, which is wrong, and the other person got 12, then that person who got 35 would have a constitutional argument. Well, I don't think that the Constitution is quite that narrow or tunnel-visioned. Dissimilar conduct is what I talked about. The conduct for which Mr. Yoselowitz has been sentenced to a class X doesn't rise to the level of conduct that people who are sentenced for class Xs commit. He did not commit a violent offense. He did not commit anything with the potential for great bodily harm, or did he cause great bodily harm, and that's dissimilar conduct. That is the constitutional basis here. If you want to sit and look at a tunnel vision all day long, obviously we'd never be able to pass that muster. However, I don't believe that's what the courts or the Constitution requires. Additionally, if you want to talk about similar conduct, look at the Narcotics Profiteering Act. That's specifically the same conduct that Mr. Yoselowitz committed. A prosecutorial decision was made which to charge him with, but the conduct was exactly the same. At least two deliveries, one of which was a class X for profit. That's a class I. He had two deliveries. He was clearly for profit. The amount doesn't have to be more or less. It doesn't matter what the amount is under the Narcotics Profiteering Act. That's clearly similar conduct, and that clearly alone would get us past our burden. But I don't think that the Constitution or these courts should look at things that narrowly. I believe that we have met our burden. I believe that the class X penalty is unconstitutional for possession of 5,000 grams or more with intent to distribute. And I would ask that your honors reverse the sentence in proportion to declare it unconstitutional. Thank you, counsel. I take the matter under advice.